**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARY LARKIN and DAG SAGFORS, Derivatively on Behalf of Nominal Defendant PEGASYSTEMS INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALAN TREFLER, PETER GYENES, RICHARD JONES, CHRISTOPHER LAFOND, DIANNE LEDINGHAM, SHARON ROWLANDS, LEON TREFLER, LARRY WEBER, KENNETH STILLWELL, DON SCHUERMAN, KERIM AKGONUL, and BENJAMIN BARIL, <br><br> Defendants, <br><br> and <br><br> PEGASYSTEMS INC., <br><br> Nominal Defendant. | Case No.: 1:25-cv-10303-WGY |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR LEAVE TO INTERVENE AND**
**STAY SHAREHOLDER DERIVATIVE ACTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL AND PROCEDURAL HISTORY ................................................................. 4

      A.     A Virginia Jury Awards $2 Billion In Damages for Defendants' Illegal
              Scheme to Steal Trade Secrets ............................................................... 4

      B.     State Plaintiffs Exercised Their Right to Inspect Company Books and
              Records Under § 16.02 and Complied With Massachusetts Law ........................... 5

      C.     The Company Forms a Demand Committee that Lacks Independence and
              Performs an Inadequate Investigation .................................................... 6

      D.     State Plaintiffs' Consolidated Complaint Is Substantively Superior to the
              Federal Plaintiffs' Complaint ............................................................... 8

ARGUMENT .................................................................................................................. 10

I.     STATE PLAINTIFFS ARE ENTITLED TO INTERVENTION AS OF RIGHT .......... 10

      A.     The Motion Is Timely ......................................................................... 10

      B.     State Plaintiffs Have Important Interests in the Federal Action ........................... 11

      C.     State Plaintiffs' Interests Will Be Impaired Absent Intervention ......................... 12

      D.     Existing Parties Do Not Adequately Represent State Plaintiffs' Interests ........... 12

II.    ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS DISCRETION
       TO GRANT PERMISSIVE INTERVENTION ............................................................. 15

III.   THE FEDERAL ACTION SHOULD BE STAYED PENDING RESOLUTION
       OF THE STATE ACTION ................................................................................ 16

IV.   CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*California State Tchs' Ret. Sys. v. Alvarez,*
    175 A.3d 86 (Del. 2017) (TABLE)..................................................................... 1

*California State Tchs' Ret. Sys. v. Alvarez,*
    179 A.3d 824 (Del. 2018) ........................................................................... 1, 3

*Chico-Velez v. Roche Prods., Inc.,*
    139 F.3d 56 (1st Cir. 1998)............................................................................ 13

*Colorado River Water Conservation Dist. v. U. S.,*
    424 U.S. 800 (1976)................................................................................. 16, 17

*Currie v. Grp. Ins. Comm'n,*
    290 F.3d 1 (1st Cir. 2002)............................................................................. 18

*Daggett v. Comm'n on Governmental Ethics & Election Practices,*
    172 F.3d 104 (1st Cir. 1999).................................................................... 11, 15

*FirstBank Puerto Rico, Inc. v. La Vida Merger Sub, Inc.,*
    638 F.3d 37 (1st Cir. 2011)............................................................................ 13

*Geiger v. Foley Hoag LLP Ret. Plan,*
    521 F.3d 60 (1st Cir. 2008)..................................................................... 10, 16

*In re Brooks Automation, Inc. Derivative Litig.,*
    2006 WL 8209202, (D. Mass. Dec. 22, 2006)................................... 18, 19, 20

*In re MAXXAM, Inc./Federated Dev. S'holders Litig.,*
    698 A.2d 949 (Del. Ch. 1996)........................................................................ 14

*In re Novell, Inc. S'holder Litig.,*
    2012 WL 458500 (D. Mass. Feb. 10, 2012) ............................................. 17, 18

*In re PHC, Inc. S'holder Litig v. Shear,*
    894 F.3d 419 (1st Cir. 2018)........................................................................... 1

*In re Schiff Fine Art, LLC,*
    2024 WL 1085148 (S.D.N.Y. Bankr. Mar. 12, 2024) ................................... 16

*In re Thompson,*
    965 F.2d 1136 (1st Cir. 1992)........................................................................ 15

*Jimenez v. Rodriguez-Pagan*,
    597 F.3d 18 (1st Cir. 2010)........................................................................ 17

*King v. VeriFone Holdings, Inc.,*
    12 A.3d 1140 (Del. 2011). ........................................................................... 3

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936)................................................................................... 16

*Mullane v. Portfolio Media, Inc.,*
    2020 WL 1931525 (D. Mass. Feb. 28, 2020) ....................................... 10, 11

*Operative Plasterers' & Cement Masons' Loc. Union Officers' & Emps'. Pension Fund v. Hooley,*
    2013 WL 5442366 (D. Mass. Sept. 30, 2013) ...................................... 18

*Pegasystems Inc. v. Appian Corp.,*
    81 Va. App. 433 (Va. Ct. App. 2024) .................................................... 5

*Puzey v. BJ'S Wholesale Club, Inc.,*
    2012 WL 1114164 (D. Mass. Mar. 31, 2012)....................................... 19, 20

*Rivera-Feliciano v. Acevedo-Vila,*
    438 F.3d 50 (1st Cir. 2006)................................................................... 18

*Sequin, LLC v. Renk,*
    2020 WL 5995205 (D.R.I. Oct. 2, 2020) .............................................. 19

*Steiner v. Meyerson,*
    1997 WL 349169 (Del. Ch. June 13, 1997)........................................... 14

*Wang Yan v. Rewalk Robotics Ltd.,*
    2017 WL 11488625 (D. Mass. Oct. 23, 2017)....................................... 19

*White McLaughlin v. Cambridge Sch. Comm.,*
    753 F. Supp. 3d 75 (D. Mass. 2024) ..................................................... 13

**Statutes**

Mass. Gen. L. ch. 156D
    § 7.42.................................................................................................. 2, 14
    §7.44.................................................................................................. 12, 15
    § 16.02................................................................................................ 2

**Rules**

Fed. R. Civ. P. 24 ......................................................................................... 2
Fed. R. Civ. P. 24(a)(2)................................................................................. 10

Proposed intervenors Robert Garfield ("Garfield"), Jayne Birch ("Birch"), John Dwyer ("Dwyer"), and Ray Gerber ("Gerber") (collectively, the "State Plaintiffs") move for leave to intervene and to stay the above-captioned derivative action (the "Federal Action") filed by plaintiffs Mary Larkin and Dag Sagfors (the "Federal Plaintiffs" and the "Federal Complaint").

## PRELIMINARY STATEMENT

The State Plaintiffs are plaintiffs in a parallel, earlier-filed consolidated shareholder derivative action brought on behalf of nominal defendant Pegasystems Inc. ("Pega" or the "Company"): *Dwyer, et al., v. Trefler et al.,* Case No. 2484CV01734-BLSI (the "State Action"), which is pending in the Business Litigation Session of the Suffolk County Superior Court for the Commonwealth of Massachusetts (the "BLS"). State Plaintiffs seek leave to intervene and stay this Federal Action to protect their rights and the rights of the Company.

Because shareholder derivative actions are brought on behalf of the corporation, a dismissal on the merits of a derivative action may preclude derivative claims arising from the same facts brought by other shareholders. *California State Tchs' Ret. Sys. v. Alvarez* ("*Walmart II*"), 179 A.3d 824, 829-30 (Del. 2018).[1] Because dismissal of *any* derivative case might mean the dismissal of *all* derivative actions, to avoid the preclusive effect of a dismissal a plaintiff with stronger claims must seek intervention in weaker parallel actions. *California State Tchs' Ret. Sys. v. Alvarez*

---

[1] As the First Circuit has recognized, "Massachusetts courts often look to Delaware law in analyzing corporate issues." *In re PHC, Inc. S'holder Litig v. Shear,* 894 F.3d 419, 429 (1st Cir. 2018).

In *Walmart*, the Delaware Supreme Court applied Arkansas privity law to conclude that the dismissal of one derivative action in the United States District Court for the Western District of Arkansas was preclusive as to a second derivative action filed in the Delaware Court of Chancery. The State Plaintiffs do not concede—and would, in fact, contest—that Massachusetts would follow Arkansas on this question, but make this motion to protect their interests and those of the Company from that risk. If the Court declines to stay the Federal Action, the State Plaintiffs would respectfully ask that they still be permitted to intervene so that they may brief an application to be appointed as lead plaintiffs in the Federal Action.

("*Walmart I*"), 175 A.3d 86, at \*4 (Del. 2017) (TABLE) ("[T]he Delaware Plaintiffs should have coordinated, intervened, or participated in some fashion in the Arkansas proceedings.").

Here, defendants have moved to dismiss the Federal Action on the merits on the grounds that a report recommending dismissal by the Demand Committee (the "Committee Report") reflects a proper refusal of plaintiffs' litigation demands. Defendants simultaneously seek to dismiss the State Action on the same basis—albeit against a fundamentally stronger complaint. A merits dismissal of the Federal Action places the State Action at risk.

The State Plaintiffs satisfy the requirements for either mandatory or permissive intervention under Fed. R. Civ. P. 24 ("Rule 24") because the Federal Complaint is inadequate and the Federal Plaintiffs do not adequately represent the State Plaintiffs' interests. In contrast to the Federal Plaintiffs, the State Plaintiffs followed Massachusetts law for initiating derivative actions and conducted an extensive pre-complaint investigation in support of their complaint.

*First*, unlike the Federal Plaintiffs, the State Plaintiffs made pre-suit demands under Mass. GL ch. 156D, § 7.42 ("§ 7.42") **before** filing suit. And, after the Board failed to institute litigation in response to those demands, the State Plaintiffs adhered to the forum-selection clause (the "Forum Selection Clause") in Pega's corporate bylaws requiring all derivative actions to be filed in the BLS unless "the BLS lacks jurisdiction to adjudicate" the claims. Ex. B, Article XI.

*Second*, there is no basis for the Federal Action to proceed in this Court. The only claim in the Federal Complaint as to which the BLS lacks jurisdiction is Count I, brought pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), a statute providing for exclusive federal jurisdiction. Yet, the statute of limitations on that Exchange Act claim expired after the Federal Plaintiffs voluntarily dismissed their original action to remedy their earlier failure to make a pre-suit demand as required by § 7.42.

*Third*, unlike the Federal Plaintiffs, the State Plaintiffs conducted a pre-suit books-and-records investigation under Mass. Gen. L. ch. 156D, § 16.02 ("§ 16.02"), providing the basis for certain allegations exclusively raised in the State Action, including that the Demand Committee failed to review Board minutes and materials for the period critical to evaluating State Plaintiffs' oversight claims. Ex. A ¶¶181-87.[2] State Plaintiffs also interviewed an individual the Demand Committee identified as responsible for the misconduct but whom the Demand Committee shockingly never interviewed. Unsurprisingly, his story supports the trial evidence and directly contradicts the tale woven by the Committee Report. Ex. A ¶¶209-14.

*Fourth*, the State Action asserts a broader set of claims. In contrast, the Federal Action asserts only claims largely copied from the securities class action in this Court styled *City of Fort Lauderdale Police and Firefighters Retirement System v. Pegasystems, Inc.*, No. 22-cv-11220-WGY (D. Mass. May 19, 2022) (the "Securities Class Action"), which was settled and dismissed with prejudice on March 5, 2024. ECF No. 1 ¶36. The Federal Plaintiffs assert state-law derivative claims against current and former Pega officers and members of Pega's Board of Directors (the "Board") on behalf of the Company based on the same misconduct alleged in the Securities Action. And they tack on a derivative claim under Section 10(b) of the Exchange Act against the same defendants based on the same alleged misconduct—a duplicative claim intended to manufacture a basis for federal jurisdiction.

As described in detail in the State Plaintiffs' complaint, attached as Ex. A, the State Plaintiffs go beyond claims involving the material misstatements from the Securities Action. Specifically, the State Plaintiffs allege that the individual defendants breached their fiduciary

---

[2] This process gives shareholders the ability to file a stronger complaint with the benefit of internal, Board-level documents, and is recognized as a valuable tool for shareholder plaintiffs. *See e.g.*, *Walmart II,* 179 A.3d at 853; *King v. VeriFone Holdings, Inc.,* 12 A.3d 1140, 1150 (Del. 2011).

duties by: (i) adopting a business model relying on illegally misappropriated trade secrets; (ii) failing to implement and monitor a Board-level system of oversight to ensure compliance with the Company's policies and trade secret laws; (iii) making materially misleading statements about the Company's competitive business practices and litigation brought by the Company's competitor, Appian Corp. ("Appian"); and (iv) wrongfully refusing State Plaintiffs' demands to institute litigation. Ex. A at Count I-IV.

The State Plaintiffs have met and conferred with the defendants in the Federal Action (the "Federal Defendants"), including the Company's Demand Review Committee ("Demand Committee"), and the Federal Defendants state that they: (a) do not oppose the intervention of the State Plaintiffs in the Federal Action; (b) believe that it is in the best interests of the Company for *either* the Federal Action or the State Action to be stayed, although they are agnostic as to which action should be stayed; and (c) in expressing those positions do not adopt or agree with the allegations or legal arguments set forth in this motion.

In sum, this Court should not permit the current dismissal motion to proceed against a much weaker complaint in this Court only due to the Federal Plaintiffs' inclusion of a time-barred Exchange Act claim. Stockholders should be accorded the right to have the Company's claims tested in the BLS, the forum designated by the Company's bylaws and where the most fulsome complaint was filed. Indeed, staying this Federal Action will allow the BLS to decide untested threshold issues of Massachusetts corporate law based on the considerably stronger State Action complaint.

## FACTUAL AND PROCEDURAL HISTORY

### A.    A Virginia Jury Awards $2 Billion In Damages for Defendants' Illegal Scheme to Steal Trade Secrets

Pega, incorporated in Massachusetts and headquartered in Cambridge, operates in the

intensely competitive Business Process Management industry. Ex. A ¶1. As directed by longtime Chief Executive Officer ("CEO"), founder, and controlling shareholder Alan Trefler ("Trefler"), the Company's management resorted to illegal and unethical means to obtain Appian's trade secrets in breach of their fiduciary duties. *Id.* The Board members were complicit. Instead of fulfilling their fiduciary duty of oversight, they deferred entirely to Trefler. *Id.*

Defendants concealed this scheme from stockholders for years, even after Appian sued Pega in Virginia state court for trade secret misappropriation. *Id.* ¶2. Defendants finally disclosed publicly the Appian litigation on the eve of trial in February 2020, when Appian increased its damages demand to $3 billion. *Id.* ¶137. The next month, the jury in the Virginia action returned a unanimous verdict in favor of Appian and awarded more than $2 billion in damages.[3] *Id.* ¶142. Pega appealed the verdict (captioned *Pegasystems Inc. v. Appian Corp.*, No. 1399-22-4 (Va. Ct. App. Sept. 15, 2022)). On July 30, 2024, the Virginia Court of Appeals vacated the judgment and ordered a new trial. *See Pegasystems Inc. v. Appian Corp.*, 81 Va. App. 433 (Va. Ct. App. 2024). On March 7, 2025, the Supreme Court of Virginia agreed to hear Appian's petition to reinstate the jury verdict. Briefing on the Virginia Supreme Court appeal is ongoing.

**B.    State Plaintiffs Exercised Their Right to Inspect Company Books and Records Under § 16.02 and Complied With Massachusetts Law**

By letter dated February 6, 2023, State Plaintiff Birch sent an inspection demand to Pega pursuant to § 16.02, demanding the right to inspect certain corporate books and records related to the facts giving rise to the Appian Litigation. Ex. C. By letter dated April 18, 2023, State Plaintiff Garfield sent a substantially similar books and records inspection demand to Pega pursuant to § 16.02. Ex. D. In response, and pursuant to confidentiality agreements, the Company produced

---

[3] *See Appian Corp. v. Pegasystems, Inc.,* No. 2020-07216 (Va. Cir. Ct. Fairfax Cnty.May 19, 2022) (the "Appian Litigation").

non-public corporate records to Birch and Garfield in May 2023.

State Plaintiffs each sent separate pre-suit litigation demands to the Board pursuant to § 7.42 on: (i) May 17, 2023 (Garfield); (ii) August 3, 2023 (Birch); (iii) March 25, 2024 (Dwyer); and (iv) March 26, 2024 (Gerber). Exs. E-H. After serving their respective litigation demands, each of the State Plaintiffs waited the statutorily required 90 days before filing derivative suits on behalf of Pega in the BLS. State Plaintiffs Dwyer and Gerber jointly filed their derivative lawsuit on June 28, 2024 and State Plaintiffs Birch and Garfield jointly filed their derivative lawsuit on November 22, 2024, after the Demand Committee completed its investigation.

### C.    The Company Forms a Demand Committee that Lacks Independence and Performs an Inadequate Investigation

Shortly after the Virginia Court of Appeals vacated the trial court judgment in the Appian Litigation, on October 7, 2024, the Demand Committee (a subcommittee of the Board), issued the Committee Report—a litigation-inspired investigation finding that no individual defendant had any culpability for their roles in the events giving rise to the Appian Litigation or alleged false or misleading public statements. As set forth in the State Complaint, the Committee Report does not support dismissal of State Plaintiffs' claims because the Board and Demand Committee members (*i.e.*, the Director Defendants) are not independent and their investigation—while lengthy and well-papered—is based on an incomplete record.

State Plaintiffs allege the Director Defendants are not independent for three primary reasons. *First*, they face a substantial likelihood of liability for failing to implement and monitor a system of corporate controls sufficient to oversee Pega's intellectual property ("IP") compliance and competitive intelligence ("CI") activities. Ex. A ¶10. Board-level internal documents produced in response to State Plaintiffs' pre-litigation inspection requests confirm the Director Defendants' liability. *Id.* None of the Board-level documents produced by Pega reference ***any*** oversight of

6

Pega's IP compliance and CI practices whatsoever. *Id.* Indeed, the Committee Report confirms that (i) the Director Defendants received no such reporting, and (ii) there were no applicable Board-level controls in place until after the Committee Report was issued. *Id.* Because the Director Defendants breached their fiduciary duties by failing to establish any oversight controls, they could not and cannot independently consider State Plaintiffs' § 7.42 demands.

*Second*, the Director Defendants lack independence because they are named individual defendants in multiple derivative lawsuits. *Id.* ¶11. It is unreasonable to expect the Director Defendants to render an independent, impartial decision on whether they should be sued for the very same allegations of wrongdoing they are charged with independently and objectively investigating and evaluating.

*Third*, the Director Defendants are beholden to Trefler. As Pega's controlling stockholder, Trefler has controlled and continues to control who is nominated and elected to the Board, as well as who is removed from the Board—a point Pega itself concedes in its public filings. *Id.* ¶12.

State Plaintiffs also allege the Demand Committee's investigation was inadequate. Most glaringly, the Demand Committee did not even attempt to interview the two individuals it blames for the illegal scheme. One of those individuals, defendant Benjamin Baril ("Baril"), still works at Pega and would have been obligated to sit for an interview had the Demand Committee requested one. *Id.* ¶14. The Demand Committee did not bother to ask for an interview of the other individual, John Petronio ("Petronio"). *Id.* Instead, the Demand Committee developed its "factual" record based on unsworn interviews of the individual defendants and their representatives. *Id.* ¶15. In sharp contrast, State Plaintiffs relied on trial evidence from the Appian Litigation and interviewed Petronio, whose account of events flatly contradicts the Demand Committee's conclusions. *Id.*

¶¶210-13. Presumably, the Demand Committee decided not to interview Baril because it feared his testimony would similarly contradict those conclusions.

The State Complaint alleges numerous other glaring holes in the Demand Committee's investigation, including: (i) conclusory determinations about the Demand Committee's independence without providing support or attempting to explain the process by which Demand Committee members were determined to be independent for purposes of investigating, evaluating or responding to the pre-suit demands; (ii) conclusory determinations about the full Board's independence without providing support or attempting to explain the process by which the Board was determined to be independent in the unusual circumstance where Trefler has controlled and continues to control who is nominated and elected to the Board; (iii) the failure to examine Board materials from prior to 2020, *i.e.*, pre-dating the initiation of the Appian Litigation against Pega, which is the critical time period during which Trefler's illegal scheme was actively perpetrated; and (iv) the failure to conduct witness interviews under oath, a particularly notable omission giving sworn testimony from the Appian Litigation, including testimony from certain individual defendants, conflicting with the Demand Committee's "factual" findings. Because of these critical omissions, the Demand Committee's investigation is not entitled to deference. *Id.* ¶13.

### D. State Plaintiffs' Consolidated Complaint Is Substantively Superior to the Federal Plaintiffs' Complaint

After the State Actions were filed, counsel for all State Plaintiffs agreed to work together. The State Actions were consolidated by order dated February 11, 2025. Pursuant to the schedule ordered by the State Court, State Plaintiffs filed their Consolidated Complaint on March 18, 2025. Defendants' motions to dismiss the State Action were filed on May [15], 2025.  The consolidation order also provided for a briefing schedule on defendants' motions to dismiss, with briefing set to

conclude on August 1, 2025.[4] A hearing is scheduled for September 4, 2025.

State Plaintiffs' Consolidated Complaint (and their attached complaint in intervention) is objectively superior to the operative complaint filed by Federal Plaintiffs in several ways. *First*, State Plaintiffs' operative complaint relies on confidential, internal, Board-level documents produced by the Company in response to State Plaintiffs' inspection demands. Federal Plaintiffs, conversely, chose not to invest the time and effort required to obtain and review internal documents from Pega prior to filing their lawsuits, and simply rushed to the courthouse instead.

*Second*, the State Plaintiffs' operative complaint discusses, in great detail, the Committee Report and explains why it is fatally flawed. In contrast, Federal Plaintiffs' pleading makes only conclusory allegations that the Demand Committee's refusal of their belated litigation demands was wrongful—a point defendants strenuously argue in support of dismissal. *Compare* ECF No. 1 at 66-77, *with* ECF No. 22 at 15 (arguing the Federal Plaintiffs' "Complaint includes an almost stunning number of hyperbolic, conclusory, and demonstrably false allegations" concerning the good faith and reasonableness of the Committee Report).

*Third*, the Federal Plaintiffs' complaint is markedly different from State Plaintiffs' complaint. Federal Plaintiffs largely rely on allegations asserted in the related Securities Action and simply recast those allegations with minor changes in their own complaint. State Plaintiffs' complaint, in contrast, is tailored to the facts of the case and provides the best chance for success on the merits. Finally, as an obvious artifice to avoid the Forum Selection Clause by including a claim subject to exclusive federal jurisdiction, Federal Plaintiffs' complaint includes a claim for violation of Section 10(b) of the Exchange Act. But this claim is time-barred. The last corrective

---

[4] State Plaintiffs intentionally negotiated for an elongated briefing schedule to allow time for the appellate briefing at the Virginia Supreme Court on the Appian Litigation trial verdict to conclude, which may have a material impact on the value of the alleged damages.

disclosure alleged by the Federal Plaintiffs was made on September 19, 2022 (ECF No. 1 ¶20), but Federal Plaintiffs' complaint was filed on February 7, 2025—well after September 19, 2024, the expiration date for the two-year statute of limitations applicable to Section 10(b) claims. *See* 28 U.S.C. § 1658(b) (providing that Section 10(b) and Rule 10b-5 private securities fraud actions "may be brought not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation").

## ARGUMENT

## I.    STATE PLAINTIFFS ARE ENTITLED TO INTERVENTION AS OF RIGHT

Any party may intervene as of right if the party has "an interest relating to the property or transaction that is the subject of the action and [are] so situated that disposing of the action may as a practical matter impair or impede the movant['s] ability to protect [their] interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). State Plaintiffs are entitled to intervene and obtain a stay as Federal Plaintiffs have demonstrated they cannot adequately represent the interests of Pega shareholders in this Federal Action.

Proposed intervenors must show: (1) their motion is "timely"; (2) they have an "interest relating to the property or transaction that forms the foundation of the ongoing action"; (3) the "disposition of the action threatens to impair or impede [their] ability to protect [their] interest"; and (4) no "existing party adequately represents" their interests. *Mullane v. Portfolio Media, Inc.*, 2020 WL 1931525, at *3 (D. Mass. Feb. 28, 2020) (*quoting Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011)). As a general matter, a court "must approach the four-factor test 'holistically' and keep a 'commonsense view of the overall litigation.'" *Id.* (*quoting Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998)). All factors are satisfied here.

### A.    The Motion Is Timely

The timeliness inquiry looks to three factors: "1) the length of time the intervenor knew

her interest was imperiled; 2) the foreseeable prejudice to the existing parties if intervention is granted, or to the intervenor if it is denied; and 3) any "idiosyncratic circumstances" which weigh for or against intervention." *Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 65 (1st Cir. 2008).

The Motion is timely. The Federal Action is still in its infancy: no discovery or substantive legal progress has occurred. *Id.* at 65. State Plaintiffs filed this motion promptly after defendants and the Demand Committee filed their motions to dismiss (ECF No. 22), seeking a merits dismissal. 521 F.3d at 65 (intervention timely when requested after proposed intervenor "became aware that her interests were imperiled).[5]

### B.    State Plaintiffs Have Important Interests in the Federal Action

To intervene as of right, the party seeking intervention must identify a viable interest "relating to the property or transaction that forms the foundation of the ongoing action." *Mullane*, 2020 WL 1931525 at *5 (*quoting Ungar*, 634 F.3d at 50). The claims "must bear a sufficiently close relationship to the dispute between the original litigants" and the interests must be "direct, not contingent or speculative." *Id.* (*quoting Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 42 (1st Cir. 1992)) (quotation marks omitted).

Like the State Plaintiffs, the Federal Plaintiffs assert derivative claims challenging the Committee Report, which they must demonstrate was not the product of an independent Demand Committee or an adequate investigation in order to survive a motion to dismiss. Accordingly, there is a direct relationship between the underlying facts and the challenges to the Committee Report in both the State and Federal Actions.

---

[5] As noted above, defendants and the Demand Committee moved to dismiss the consolidated complaint in the State Action. Accordingly, there is virtually no difference between the procedural posture of the Federal Action and the State Action.

### C.    State Plaintiffs' Interests Will Be Impaired Absent Intervention

To determine whether intervention is required for protection of an interest, courts apply a "practical test," querying whether the proposed intervenor's interests would be "adversely affected" based on the outcome of the lawsuit. *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 110-11 (1st Cir. 1999). Here, both State Plaintiffs and Federal Plaintiffs bring claims on behalf of Pega based on the same underlying misconduct. There can be no real dispute that State Plaintiffs' interests would be adversely affected if this Court were to grant defendants' motion to dismiss (ECF No. 22) and find that under Mass. Gen. L. ch. 156D §7.44 ("§7.44") the Demand Committee (a) consisted of duly authorized independent directors and (b) conducted an adequate investigation, based on which it determined not to pursue Federal Plaintiffs' claims. ECF No. 22 at 1 (citing *Halebian v. Berv*, 457 Mass. 620, 632 (2010)). Defendants would undoubtedly assert that a decision from this Court under §7.44 concerning the Demand Committee and its investigation has a preclusive effect on the State Action. Accordingly, the Federal Action poses a direct, adverse, and immediate consequence for State Plaintiffs, Pega shareholders, and Pega.

### D.    Existing Parties Do Not Adequately Represent State Plaintiffs' Interests

Finally, the Federal Plaintiffs do not adequately represent State Plaintiffs' interests. They have repeatedly demonstrated their unwillingness or inability to conduct the requisite legal research, investigation, and due diligence.

*First*, the Federal Plaintiffs have no standing. The Exchange Act claim in the Federal Action is designed to trigger federal subject matter jurisdiction and avoid application of the Forum Selection Clause. But Pega's bylaws require derivative claims to be filed in the BLS unless "the BLS lacks jurisdiction":

Unless the Corporation consents in writing to the selection of an alternative forum, the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting any claim of breach of a fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's shareholders, (iii) any action asserting a claim arising pursuant to any provision of the MBCA or the Articles of Organization or these Bylaws … or (iv) any action asserting a claim governed by the internal affairs doctrine (together, the 'Defined Claims') shall be the Business Litigation Section of the Superior Court of Suffolk County, Massachusetts (the "BLS") irrespective of any waivable claims challenging jurisdiction or venue of the BLS. If (and only if) the BLS lacks jurisdiction to adjudicate a Defined Claim, the federal district court for the District of Massachusetts, Eastern Division, shall be the exclusive forum for such a Defined Claims.… Any person purchasing or otherwise acquiring or holding any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Article XI.

Thus, the only claim in the Federal Complaint as to which the BLS lacks jurisdiction is Count I, the Exchange Act claim. But that claim is defective on its face. A claim under § 10(b) and Rule 10b–5 must "be brought not later than the earlier of—(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." *FirstBank Puerto Rico, Inc. v. La Vida Merger Sub, Inc.*, 638 F.3d 37, 38 (1st Cir. 2011) (citing 28 U.S.C.A. § 1658(b)). Federal Plaintiffs' complaint alleges that stockholders learned of the individual defendants' misstatements by no later than September 16, 2022, when Pega announced that a final judgment was entered in the Appian Litigation and that it was ordered to pay over $23.6 million in attorneys' fees and costs as well as post-judgment interest. ECF No. 1 ¶20. Federal Plaintiffs filed their complaint on February 7, 2025, well over two years after the last alleged corrective disclosure on September 16, 2022.

Demonstrating Federal Plaintiffs' lack of diligence, although they filed an earlier complaint that was not barred by the statute of limitations, they dismissed that case without prejudice as they had not complied with the statutory demand requirement under § 7.42 and were therefore subject to dismissal on that basis. They later refiled this Federal Action. As this Court recently held, "a

dismissal without prejudice operates as if no suit had ever been filed." *White McLaughlin v. Cambridge Sch. Comm.*, 753 F. Supp. 3d 75, 80 (D. Mass. 2024) (Young, J.); *see also Chico-Velez v. Roche Prods., Inc.*, 139 F.3d 56, 59 (1st Cir. 1998) ("prescriptive period is not tolled by filing a complaint that is subsequently dismissed without prejudice."). Accordingly, because Federal Plaintiffs do not have a viable federal claim under §10(b) and Rule 10b–5 they cannot avoid the Forum Selection Clause. Further, Federal Plaintiffs have not alleged that Pega "consented in writing" to this forum or that the BLS would lack jurisdiction over any other claim. State Plaintiffs' rights should not be determined by plaintiffs who lack standing to litigate Pega's derivative claims in federal court.[6]

*Second*, Federal Plaintiffs have demonstrated their lack of knowledge regarding relevant Massachusetts law. Federal Plaintiffs both filed derivative complaints before making a pre-suit demand on the Board, as required by § 7.42. ECF 22 at 5; *see also* Verified S'holder Deriv. Compl., *Larkin v. Gyenes*, No. 22-cv-11985 (D. Mass. Nov. 21, 2022), ECF No. 1; Verified S'holder Deriv. Compl., *Sagfors v. Gyenes*, No. 23-cv-10933 (D. Mass. Apr. 28, 2023). Only after defendants advised Federal Plaintiffs of their fundamental mistake did they serve a § 7.42 demand on the Board. ECF No. 22 at 5; *see also* ECF Nos. 1-3, 1-4. State Plaintiffs, in contrast, complied with § 7.42's universal demand requirement and served litigation demands before filing their complaints.

*Third*, Federal Plaintiffs conducted an inadequate pre-suit investigation and therefore failed to allege facts material to analysis regarding the adequacy of the Demand Committee's investigation. For example, the Demand Committee pinned the blame for Pega's misconduct on

---

[6] Courts routinely grant intervention where a plaintiff loses standing. *See, e.g.*, *Steiner v. Meyerson*, 1997 WL 349169, at *4 (Del. Ch. June 13, 1997) (granting intervention where original plaintiff lost standing); *In re MAXXAM, Inc./Federated Dev. S'holders Litig.*, 698 A.2d 949, 956 (Del. Ch. 1996) (granting intervention where original plaintiff became disqualified).

one former employee and one current employee, but inexplicably did not interview either of those individuals. In sharp contrast to Federal Plaintiffs, counsel for State Plaintiffs interviewed the former employee. Ex. A at ¶¶207-11. During that interview, the former employee recounted facts contradicting the Demand Committee's findings—which Federal Plaintiffs corroborated based on sworn testimony and trial exhibits from the Appian Litigation. *Id.* at ¶¶212-13. In addition, State Plaintiffs exercised their right to obtain Pega's internal Board-level books and records under § 16.02 and identified Board-level evidence critical to analyzing whether the Demand Committee members and Board faced a substantial likelihood of liability, which the Demand Committee failed to review. *Id.* at ¶¶214-17. In contrast, Federal Plaintiffs made no attempt to obtain and review these documents, and their complaint fails to allege these glaring deficiencies in the Demand Committee's investigation. Simply put, Federal Plaintiffs' inadequate pre-suit investigation resulted in a deficient complaint which is highly unlikely to survive the rigors of § 7.44. *Cf. Daggett*, 172 F.3d at 112 (explaining that "a refusal to present obvious arguments could be so extreme as to justify a finding that representation by the existing party was inadequate"). In sum, the State Plaintiffs' request for intervention as a right should be granted.

## II.    ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS DISCRETION TO GRANT PERMISSIVE INTERVENTION

Should the Court elect not to grant leave to intervene as of right, State Plaintiffs respectfully request that the Court exercise its broad discretion to permit them leave to intervene pursuant to Rule 24(b)(1). Three key factors should be weighed: (1) the proposed intervenor's "claim or defense and the main action have a question of law or fact in common"; ( 2) the proposed intervenor's interests "are not adequately represented by an existing party"; and (3) intervention "would not result in undue delay or prejudice to the original parties." *In re Thompson*, 965 F.2d

1136, 1142 n.10 (1st Cir. 1992) (citation omitted). A district court "can consider almost any factor rationally relevant [and] enjoys very broad discretion." *Daggett*, 172 F.3d at 113.

*First*, the State Action and Federal Action share a common dispositive state-law question under §7.44: whether the Demand Committee was independent and conducted an adequate investigation.

*Second*, Federal Plaintiffs do not adequately represent State Plaintiffs' interests. Indeed, Federal Plaintiffs' complaint is so deficient that defendants have forgone obvious jurisdictional and standing defenses, including those based on expiration of the statute of limitations for the Exchange Act claim in an attempt to obtain a merits dismissal based on the Committee Report. This suggests forum shopping for a weaker complaint, which weighs in favor of intervention. *See In re Schiff Fine Art, LLC*, 2024 WL 1085148, at *5 (S.D.N.Y. Bankr. Mar. 12, 2024) (granting intervention in part based on potential forum shopping).

*Third*, intervention would not result in undue prejudice or delay. No discovery or substantive legal progress has occurred in the Federal Action. *Geiger*, 521 F.3d at 65.

In sum, permissive intervention is warranted to protect the interests of the State Plaintiffs as well as the Company and its stockholders from an adverse decision on the deficient Federal Action complaint.

## III.    THE FEDERAL ACTION SHOULD BE STAYED PENDING RESOLUTION OF THE STATE ACTION

The State Plaintiffs request that the Court stay the later-filed Federal Action pending the resolution of the State Action. A stay will benefit the Court, the Company, and Pega stockholders, without meaningfully prejudicing the Federal Plaintiffs or the Federal Defendants who likewise believe that it is in the best interests of the Company for any derivative claims to be adjudicated in

16

a single forum. Most significantly, a stay will allow the BLS to decide threshold questions of Massachusetts state corporate law based on the State Plaintiffs' much stronger complaint.

Federal courts possess the inherent power to stay proceedings for prudential reasons. *Landis v. N. Am. Co.,* 299 U.S. 248, 254–55 (1936). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants[.]" *Id.* at 254-55 (citation omitted).

While federal courts have an unflagging obligation to exercise jurisdiction given to them, under the *Colorado River* doctrine of abstention, a federal court may stay a pending action in favor of a parallel state-court action in exceptional circumstances "based on 'considerations of wise judicial administration' that counsel against duplicative lawsuits." *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010). To determine whether there are exceptional circumstances warranting a stay, courts consider the following non-exclusive list of factors:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Id.* at *27-28. "'No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required.'" *Id.* at *28 (citing *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 818–19 (1976)). Although described as an exception, such circumstances do exist; the First Circuit has affiliated *Colorado River* abstentions on multiple occasions. *Id.*

17

The requisite exceptional circumstances justifying a stay of the Federal Action are present here. All the *Colorado River* factors either weigh for a stay or are neutral or nonapplicable.[7]

*First*, the State and Federal Actions are parallel actions. As described above, both actions involve the same parties and issues and are based on the same underlying conduct. This Court has held on multiple occasions that the inclusion of a federal securities claim in a federal derivative action does not change the result. *In re Novell, Inc. S'holder Litig.*, 2012 WL 458500, at *7 (D. Mass. Feb. 10, 2012) (holding that actions based on the same underlying allegations were parallel despite the inclusion of a federal Exchange Act claim); *In re Brooks Automation, Inc. Derivative Litig.*, 2006 WL 8209202, at *2 (D. Mass. Dec. 22, 2006) (same).

*Second*, the order in which the actions were filed supports a stay. The original complaints in the State Action were filed months before the existing complaint in the Federal Action. *Supra*, Fact. §§ B, D.

*Third*, the dearth of relevant Massachusetts case law further supports a stay. As this Court has observed: "There is not much Massachusetts case law interpreting § 7.44 or addressing directors' independence[.]" *Operative Plasterers' & Cement Masons' Loc. Union Officers' & Emps'. Pension Fund v. Hooley*, 2013 WL 5442366, at *4 (D. Mass. Sept. 30, 2013). Here, defendants' motion to dismiss the Federal Action relies *entirely* on Massachusetts state law.  ECF No. 22 at 7-20. Defendants' only argument for dismissal is that "Massachusetts law requires dismissal of the Complaint because the DRC (a) consists solely of duly authorized independent directors and (b) has determined in good faith, after a reasonable investigation, that pursuing Plaintiffs' claims would not be in the Company's best interests." *Id.* at 3. Accordingly, a stay in

---

[7] No *res* is involved and both courts are geographically convenient. Nor is there any basis for removal jurisdiction, given the lack of a viable federal question claim and forum selection claims.

favor of the State Action appropriately allows for Massachusetts courts to decide the controlling issues of Massachusetts corporate law. *See Rivera-Feliciano v. Acevedo-Vila*, 438 F.3d 50, 62 (1st Cir. 2006) (upholding a *Colorado River* stay because there were "many underlying unresolved issues of Puerto Rican law … and to have the Puerto Rico courts decide those controlling issues of Puerto Rico law first."); *Currie v. Grp. Ins. Comm'n*, 290 F.3d 1, 11 (1st Cir. 2002) (upholding *Colorado River* stay where the "case presents complex questions of state law that would best be resolved by a state court." (citation omitted)); *Novell*, 2012 WL 458500, at *7 (granting stay in favor of fiduciary duty action in Delaware state court despite federal plaintiffs' inclusion of an Exchange Act claim).

*Fourth*, the State Action is better suited to protect the interests of Pega and its stockholders. As explained above, unlike the Federal Plaintiffs, the State Plaintiffs conducted a fulsome investigation, including pre-suit § 16.02 inspection of Board-level books and records and an interview with a key witness not interviewed by the Demand Committee—making the State Action complaint more likely to survive a motion to dismiss. *Supra*, Fact. §§ B, D. Resolution of the State Action would therefore not only negate the need for this Court to decide the state-law issues, but would also protect Pega and its stockholders by allowing the issues to be decided based on the much stronger derivative complaint. *See Puzey v. BJ'S Wholesale Club, Inc.*, 2012 WL 1114164, at *4 (D. Mass. Mar. 31, 2012) (granting stay where "resolution of the [state] litigation would likely negate the need for this court to decide [the federal plaintiff's] fiduciary duty and aiding and abetting claims"); *Brooks Automation,* 2006 WL 8209202, at *3 (granting stay of derivative action where the federal courts were not necessarily in a better position to adjudicate the threshold issue of demand futility).

*Fifth*, the contrived nature of the Federal Action further supports a stay. As explained

19

above, the only non-time-barred claims were and are required to be filed in the BLS pursuant to the Forum Selection Clause. *See Sequin, LLC v. Renk*, 2020 WL 5995205, at \*12 (D.R.I. Oct. 2, 2020) (stay warranted where plaintiff alleged claims of "questionable merit" and amended the complaint to add claims to stave off federal dismissal); *Wang Yan v. Rewalk Robotics Ltd.*, 2017 WL 11488625, at \*5 (D. Mass. Oct. 23, 2017) (recognizing that *Colorado River* abstention is appropriate if federal claim is frivolous).

*Sixth*, the desirability of avoiding piecemeal litigation favors a stay. "The First Circuit has held that the risk of piecemeal litigation favors abstention where a state court decision could negate the need for the federal court to act on complex issues relating to state law, or where state and federal actions may arrive at different outcomes on the same issue." *Puzey*, 2012 WL 1114164, at \*4 (collecting cases); *Brooks Automation*, 2006 WL 8209202, at \*3 (stay warranted where it was "not clear that a decision by the state court on the merits would estop plaintiffs from pursuing their federal securities claims in federal court"). Here, the Company and its stockholders are subject to the Forum Selection Clause in the Company's bylaws purportedly adopted to avoid the burden of parallel and piecemeal litigations. A stay of the Federal Action gives effect to the Forum Selection Clause, saving the resources of the parties and courts.

A stay is therefore warranted to protect the interests of the Company and its stockholders.

## IV.    CONCLUSION

For the foregoing reasons, State Plaintiffs respectfully request that the Court allow intervention as a right or pursuant to its discretion and to stay the proceedings.

Dated: June 6, 2025

OF COUNSEL:

Edward G. Timlin
Eric J. Riedel
**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
(212) 554-1400
Edward.Timlin@blbglaw.com
Eric.Riedel@blbglaw.com

Richard A. Speirs
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
(212) 220-2912
rspeirs@cohenmilstein.com

Rusty E. Glenn
**SHUMAN, GLENN & STECKER**
600 17th Street, Suite 2800 South
Denver, CO 80202
(303) 861-3003
rusty@shumanlawfirm.com

Brett D. Stecker
**SHUMAN, GLENN & STECKER**
326 W. Lancaster Avenue
Ardmore, PA 19003
 (303) 861-3003
brett@shumanlawfirm.com

Respectfully submitted,

*/s/ Joel Fleming*
Joel Fleming (BBO #685285)
Lauren Godles Milgroom (BBO #698743)
**EQUITY LITIGATION GROUP LLP**
1 Washington Mall #1307
Boston, MA 02108
(617) 468-8602
jfleming@equitylitigation.com
lmilgroom@equitylitigation.com

Daniel Silverman (BBO #704387)
**COHEN MILSTEIN SELLERS & TOLL
PLLC**
769 Centre Street, Suite 207
Boston, MA 02130
(617) 858-1990
dsilverman@cohenmilstein.com

*Counsel for Proposed Intervenors*