# Exhibit C

# COHENMILSTEIN

Richard A. Speirs
(212) 220-2912
rspeirs@cohenmilstein.com

February 6, 2023

**BY FedEx OVERNIGHT**

Board of Directors Pegasystems, Inc.
One Main Street
Cambridge, MA. 02142-1531
Attn: Matthew J. Cushing
General Counsel

Re:  ***Pegasystems, Inc. – Demand for Inspection of Books and Records Pursuant to Mass.
G.L.c. 156D, § 1602***

Dear Mr. Cushing:

We write on behalf of Ms. Jayne Birch ("Ms. Birch" or "Stockholder") who has retained our firms[1] in connection with this request to inspect and copy the books and records of Pegasystems, Inc. and its subsidiaries ("Pegasystems" or the "Company") pursuant to Mass. G.L.c. 156D, § 1602 (the "Demand").

Ms. Birch currently holds shares of Pegasystems common stock and has held continuously at all relevant times. As a current stockholder, Ms. Birch has a statutory and common law right to inspect the books and records requested herein. As evidence of the Stockholder's continued beneficial ownership of Pegasystems common stock, we have enclosed with this letter documentation (in the form of account statements) reflecting her current and continued ownership of Pegasystems common stock at all relevant times.  *See* Exhibit 1.[2]  Ms. Birch intends

---

[1] Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Bronstein Gewirtz and Grossman LLC ("BG&G")

[2] The Company and its agents must agree that the financial records provided documenting stockholder's Pegasystems stock ownership are to be kept strictly confidential as they contain

COHENMILSTEIN

February 6, 2023
Page 2

to continue to hold her shares at least through the conclusion of the proceedings contemplated in this Demand.

On May 9, 2022, a unanimous jury found that Pegasystems had misappropriated trade secrets from its competitor, Appian Corporation ("Appian"), and awarded Appian more than $2 billion in compensatory damages ("Appian Litigation"). The jury further found that Pegasystems acted willfully and maliciously by misappropriating Appian's trade secrets. Among the facts supporting the verdict included: (1) Pegasystems hiring a "spy" (i.e., contractor) to gain access to Appian's trade secrets; (2) Pegasystems' CEO, Alan Trefler ("Trefler") (among others) purportedly admitting to using fake identities to improperly gain access to Appian's software and other information; (3) Trefler participating in a meeting during which Trefler received Appian's trade secrets supplied by that "spy"; and (4) Trefler admitting that Pegasystems should not have hired that contractor. On September 16, 2022, the court entered a judgment in favor of Appian ordering Pegasystems to pay over $2 billion in damages, more than $25 million in attorneys' fees and costs, and post-judgment interest of approximately $122 million per year.

Pegasystems did not disclose either the existence of the Appian Litigation nor the underlying scheme and their associated risks for at least two years. Pegasystems finally disclosed the litigation just five weeks before the trial commenced.

We write to formally request on behalf of Ms. Birch, access to certain books and records of Pegasystems to investigate as more fully described below: (i) possible breaches of fiduciary duty by members of Pegasystems's Board of Directors (the "Board")[3] and officers in connection with, among other things, Pegasystems' alleged scheme to violate trade secret laws; (ii) the Company's issuance of materially false and misleading statements in its SEC filings and public statements designed to conceal its illicit business practices; (iii) the Board's failure to oversee and investigate the Company's business practices including violations of the Company's code of conduct by its CEO, senior executives and management; and (iv) the independence or lack thereof of the members of the Board to consider a demand to initiate litigation on the Company's behalf. As detailed herein, Stockholder has a credible basis to believe that the Board has engaged in breaches of fiduciary duty.

---

sensitive financial information. Stockholder or stockholder must provide written permission before these records can be disclosed.

[3] The current members of Pegasystems's Board are: Peter Gyenes, Richard Jones, Christopher Lafond, Dianne Ledingham, Sharon Rowlands, Alan Trefler and Larry Weber.

COHENMILSTEIN

February 6, 2023
Page 3

## RELEVANT BACKGROUND

Pegasystems develops customer relationship management ("CRM") software. The Company automates customer interactions across transaction-intensive enterprises and provides its products to customers in the banking, mutual funds and securities, mortgage services, card services, insurance, healthcare management, and telecommunications industries. Appian is one of Pegasystems' main competitors.

On May 29, 2020, Appian filed a complaint against Pegasystems and one of its contractors, Youyong Zou ("Zou"), in the Circuit Court for Fairfax County, Virginia, asserting claims for trade secret misappropriation, violation of the Virginia Computer Crimes Act, tortious interference, and statutory business and common law conspiracy. Appian alleged, among other things, that from 2012 to 2014, Pegasystems had retained Zou, who had access to Appian's software and documentation, to misappropriate Appian's trade secrets and provide them to Pegasystems. Specifically, Zou secretly downloaded Appian's confidential information, recorded videos and took screenshots of Appian's platform, showed Pegasystems how to use Appian's platform, and provided the Company with insight into Appian's software. Zou met and collaborated with Pegasystems' officers, senior executives and others, including Trefler, the CEO. Pegasystems took numerous steps to conceal the scheme. As reported by Bloomberg News during the trial:

> Appian put forward evidence that [Zou] passed trade secret information to Pegasystems to enable its employees to build competitive features and train Pegasystems' sales team to better compete against Appian. During the proceedings, Alan Trefler, Pegasystems' Founder and CEO, admitted that it was "inappropriate" for Pegasystems employees to have hired the Contractor, and that the Contractor "apparently did things for which he was not entitled."

> The Contractor, referred to as a "spy" internally at Pegasystems, helped Pegasystems generate dozens of video recordings of the Appian development environment for use by Pegasystems in compiling competitive materials and evaluating improvements to its platform. Appian put forward evidence that Mr. Trefler attended and participated in a meeting with the Contractor and received Appian's trade secrets supplied by the Contractor. The videos and documents created in connection with Contractor's efforts were then used by Pegasystems to train its sales force to better compete against Appian. The effort was later labeled "Project Crush" within Pegasystems. At one point, a Pegasystems

COHEN MILSTEIN

February 6, 2023
Page 4

> *employee reviewing the materials exclaimed that "we should never lose to Appian again!"[4]*

Appian also produced evidence showing that Trefler, Pegasystems' Chief Executive Officer, and other employees, used fake credentials to improperly gain access to Appian's trial software and other information and that Pegasystems then used that information improperly for competitive purposes. Appian alleged that Pegasystems use of Appian's trade secrets caused it to lose more than 200 customers and enabled Pegasystems to earn hundreds of millions of dollars.

The Company and the Board failed to disclose the existence of the Appian Litigation until almost two years after Appian filed its complaint against Pegasystems and less than five weeks before the case reached trial, despite its potential to materially affect Pegasystems' financials if there was an adverse outcome. Instead, the Company merely issued a generic cautionary statement in its 2020 Form 10-K (which the Board approved and signed) that *"[f]rom time to time, we may be subject to legal proceedings and civil and regulatory claims that arise in the ordinary course of our business activities."*

The 2020 Form 10-K, also included a misleading boilerplate risk disclosure warning shareholders that *Pegasystems "may be subject to intellectual property rights claims by third parties, which are extremely costly to defend, could require us to pay significant damages and could limit our ability to use certain technologies."* (Emphasis added). Instead, it should have noted that it was, in fact, currently subject to such claims and that the risk of being required to pay significant damages was likely.

Despite the fact that Appian had filed its complaint against Pegasystems more than eight months earlier, the Company's 2020 Form 10-K (also approved and signed by the Board) included only misleading generic risk disclosures regarding *potential* intellectual property claims and further represented that the Company *"attempt[s] to limit the amount and type of its contractual liability for infringement of the property rights of third parties."* Seemingly reflecting the Board's knowledge of Appian's charges that Pegasystems violated its trade secrets, the 2020 From 10-K noted that the Company has in the past, *"received . . . notices that claim that we have misappropriated, misused or infringed other parties' intellectual property rights."*

---

[4] "*Appian Awarded $2.036 Billion in Damages Against Pegasystems Inc.*," Bloomberg News, May 10, 2022.

COHENMILSTEIN

February 6, 2023
Page 5

Pegasystems finally disclosed the Appian Litigation for the first time in its 2021 Form 10-K filed on February 16, 2022 – less than five weeks before the case was scheduled to go to trial – asserting that it believed Appian's claims were meritless.

In its first quarter Form 10-Q filed on April 28, 2022, the Company once again reassured investors that:

> . . . The Company continues to believe that its sales of the products at issue were not caused by, or the result of, the alleged misappropriation of trade secrets, and is submitting evidence to the jury to that effect. The Company is unable to reasonably estimate possible damages because, among other things, of the uncertainty as to how a jury may decide and the parties' existing grounds for appeal based on rulings to date in the proceeding.

Likewise, the Company misleadingly touted Pegasystems' strict Code of Conduct that expressly prohibited precisely the type of illicit behavior that was used to steal Appian's trade secrets and illegally gain access to Appian's software and data.

During the trial, the jury was presented with substantial evidence supporting Appian's claims, including videos, emails, and text messages. It was also revealed that defendant Trefler had knowledge of and personally participated in the illegal scheme and testified under oath that he knew it was inappropriate to hire Zou and knew that Zou had engaged in improper activities. According to news reports:

> During the seven-week trial, Appian presented evidence that Pegasystems hired an employee of a government contractor (the "Contractor"), to provide Pegasystems with access to Appian's software as a part of an effort to learn how to better compete against Appian. In hiring the Contractor, Pegasystems instructed its third-party contracting service to recruit someone who was not "loyal" to Appian. Appian provided evidence that the Contractor, who worked as a developer in the Appian software under a government contract, violated his employer's code of conduct and his employer's agreement with Appian by providing access to an Appian competitor.

> *        *        *

> Appian also submitted that Pegasystems' product development team reviewed the materials provided by the Contractor and changed the course of Pegasystems' product engineering to take advantage of the Appian technology they saw. Specifically, Appian put forward documents and testimony that Pegasystems made use of the trade secrets gleaned from the Contractor to

COHENMILSTEIN

February 6, 2023
Page 6

> make improvements with respect to, among other things, ease of use, and social
> and mobile capabilities in the Pegasystems platform.
>
> In addition, Appian presented undisputed evidence that Pegasystems employees
> used false identities to obtain access to Appian information and trial versions of
> Appian's software, which were then used for competitive purposes. Mr. Trefler
> himself admitted to using an alias, "Albert Skii" to obtain access to Appian
> information.
>
> One Pegasystems employee admitted to creating a fake persona and a company
> to fool Appian into providing him with access to Appian's software platform.
> Other Pegasystems employees obtained access to Appian's software through
> Pegasystems' partners in India, using credentials provided to those partners
> under license (Emphasis added).

The jury concluded that Pegasystems had willfully and maliciously misappropriated Appian's trade secrets, causing Appian to lose more 201 customers and unjustly enriching Pegasystems to the tune of $479 million. Pegasystems shares plunged from $65.93 to $52.95 on May 10, 2022, erasing more than $1 billion in market capitalization in a single day.

Further, during the relevant period certain insiders at Pegasystems sold shares of Pegasystems common stock, ostensibly while in possession of material inside information regarding the illicit scheme to misappropriate Appian's trade secrets.

### ROLE OF MANAGEMENT AND THE BOARD

Stockholder believes Pegasystems scheme to misappropriate Appian's trade secrets and its subsequent concealment of Appian litigation by issuing materially false and misleading statements were part and parcel of the Company's efforts to engage in illicit business practices in violation of various laws and the Company's Code of Conduct. These practices were apparently known to and countenanced at the highest levels of the Company (including its CEO Trefler) and, through Trefler (and possibly others), by the Board and its various Committees responsible for overseeing risk, financial and disclosure matters, compensation practices and compliance with the Company's corporate governance policies and guidelines as embodied in its committee charters, Code of Conduct, and Company policies.

Thus, during the relevant period, the Directors, in breach of their fiduciary duties owed to Pegasystems, willfully or recklessly made and/or caused the Company to materially misrepresent and overstate the business, operations, competitive position, and prospects of Pegasystems. Further, the Company failed to maintain adequate internal controls and risk

COHENMILSTEIN

February 6, 2023
Page 7

management systems. As a result of the foregoing, Pegasystems' public statements were materially false and misleading at all relevant times. The aforementioned misleading statements and omissions painted a false image of the Company which artificially inflated Pegasystems' stock price.

Furthermore, certain of Pegasystems' officers and directors may have breached their fiduciary duties by selling Pegasystems common stock while in possession of material non-public information at a time when the price was artificially inflated due to the allegedly false and misleading statements of material fact.

**STOCKHOLDER HAS A PROPER PURPOSE FOR MAKING THIS DEMAND**

Stockholder makes this Demand to investigate the credible evidence that Pegasystems' top management, including its senior officers and directors, misrepresented the Company's business, operations, product development, and its compliance with Company guidelines and policies, in violation of their fiduciary duties to the Company and stockholders. Pegasystems' officers and directors allegedly failed to comply with laws and regulations by engaging in a scheme to misappropriate and use Appian's trade secrets in violation of certain laws and Company policies. In addition, the Board and the Company purportedly concealed the illegal scheme to misappropriate Appian's trade secrets by misrepresenting the Company's compliance with legal standards and the Company's Code of Conduct. Further, the Company has been named as a defendant in a class action securities fraud case, which exposes it to substantial liability beyond the $2 billion in damages owed to Appian.

Given this background, Stockholder's Demand has the proper purpose of investigating corporate wrongdoing, waste, mismanagement, and breach of fiduciary duties of loyalty, good faith and due care on the part of Pegasystems' officers and directors with respect to the above-described matters and including:

(a)   investigating whether the Board or any committee thereof approved of or took any action related to "Project Crush" or the Company's efforts in matters of competitive intelligence at any time involving Appian or any other competitor;

(b)   investigating whether the Board or any committee thereof approved of the Company's purported misleading public statements and SEC filings;

(c)   investigating whether the policies, practices, and processes employed by management and Company's business practices, particularly with regard to the statements and disclosures regarding the Company's business, product development, competitive practices, marketing and financial condition, were or are inadequate, or in violation of applicable laws and regulations;

COHEN MILSTEIN

February 6, 2023
Page 8

(d)    investigating whether the officers and Board failed to adopt or whether Pegasystems had adequate controls in place to oversee and monitor its business regarding product development, business risks, competitive practices, marketing and related disclosures to assure that Pegasystems was not disseminating materially false and misleading information and otherwise was in compliance with all federal and state laws and regulations;

(e)    investigating potential claims involving the sale of Pegasystems stock by insiders while in possession of material non-public information;

(f)    investigating the disinterestedness and ability of the Board to consider a demand to initiate and maintain litigation related to any breaches of fiduciary duty as described herein and determining whether it is necessary to assert derivative claims or other litigation to remedy such breaches of fiduciary duty; and

(g)    investigating the independence of Pegasystems's directors and officers in connection with the matters raised in this Demand.

This Demand to inspect Pegasystems's books and records is undertaken in good faith and pertains to Stockholder's interest in reviewing the manner in which Pegasystems is being managed. Accordingly, Stockholder is entitled to inspect all necessary books and records to satisfy these stated purposes and protect its investment. *Id*.

**STOCKHOLDER'S REQUESTS**

Stockholder therefore submits the following requests:

**Request 1.**    All Board Materials[5] concerning or relating to Pegasystems's internal controls and risk management systems for reviewing or overseeing public disclosures regarding the Company's business and finances including competition and marketing.

---

[5] The term "Board Materials" means documents, regardless of whether they are in hard copy or electronic form, that were prepared, provided, or discussed in connection with any meeting of the: Board, or any other regular or specially created committee thereof (including, without limitation, all meeting minutes, agendas, transcripts, notes, summaries, presentations, Board packages, recordings, memoranda, charts, drafts of meeting minutes where final forms do not exist, exhibits distributed at meetings, or Board resolutions). This term also includes electronic communications—including, without limitation, emails, text messages, or other digital

COHENMILSTEIN

February 6, 2023
Page 9

**Request 2.** All Board Materials concerning or relating to the Company's business plans or projections regarding development and marketing of any products including products that compete with Appian.

**Request 3.** All Board Materials concerning or relating to Pegasystems' misappropriation of trade secrets from Appian as reflected by the jury verdict on May 9, 2022, including any actions taken by the Board or any committee thereof relating to the Appian Litigation.

**Request 4.** All Board Materials concerning or relating to any review, inquiry or investigation regarding Appian's claims that Pegasystems misappropriated proprietary trade secrets.

**Request 5.** All Board Materials concerning or relating to the preparation, review and issuance of the Company's SEC filings and other public statements regarding the Appian Litigation.

**Request 6.** All insider trading policies for Pegasystems and all documents related to stock or options transactions engaged in by any officer or director during the relevant period.

**Request 7.** All Board Materials concerning or relating to any investigation of the Company by the Board or any committee of the Board, any regulatory body, including but not limited to any United States governmental agency, any State governmental agency, the DOJ, SEC, Congress or any other legislative or regulatory body regarding the misappropriation of trade secrets from Appian or public statements regarding Appian.

**Request 8.** All documents provided to any other stockholder who made a demand from January 1, 2020, through the present pursuant to Mass. G.L.c. 156D, § 1602 concerning any of the matters discussed herein.

**Request 9.** All documents which have any bearing on the independence and disinterestedness, or lack thereof for purposes of futility of demand for any current member of the Board of Directors including but not limited to all

---

communications—sent to, received by, or copied to any member of the Board in connection with the subjects discussed in this letter.

COHEN MILSTEIN

February 6, 2023
Page 10

documents reflecting any personal, business or familial relationships among or between any directors and all Director questionnaires.

### CONCLUSION

Stockholder hereby demand that: (a) originals or attested copies of the foregoing documents and records be made available for inspection and copying by Cohen Milstein and its attorneys and agents, during usual business hours until the inspection is completed; or (b) the Company deliver copies of such records, within five (5) business days after receipt of this letter, to the address listed below; or via secure email to rspeirs@cohenmilstein.com. Cohen Milstein is willing to agree to an appropriate Confidentiality Agreement governing any production.

Please advise as soon as possible and, in any event, on or prior to the expiration of five business days after the date this demand is received by the Company, when and where the items demanded above will be made available or, in lieu thereof, when copies of such items will be delivered.

Sincerely,

COHEN MILSTEIN SELLERS & TOLL PLLC

Richard A. Speirs

BRONSTEIN GEWIRTZ & GROSSMAN LLC

Peretz Bronstein

cc: Eitan Kimmelman, Esq.

# Exhibit 1



**STATEMENT** | For the Period July 1 — September 30, 2022

## Plan Details:

| | |
|---|---|
| Plan Number: | 93N |
| Company Name: | Pegasystems Inc |
| Issuer Description: | PEGASYSTEMS INC |
| Account Number: | ███████ |

*Morgan Stanley Smith Barney LLC. Member SIPC.*

## Contact Us:

**Morgan Stanley**
Global Stock Plan Services
P.O. Box 182616
Columbus OH 43218-2616

**Morgan Stanley Participant Services**
www.stockplanconnect.com
1-800-367-4777; 1-801-617-7414
24-hour coverage, Monday - Friday. Please check the website for specific coverage details in your region.

## Share Purchase and Holdings Summary

| | Opening Value (as of 7/1/22) | Closing Value (as of 9/30/22) |
|---|---|---|
| Number of Shares | 223.205 | 223.327 |
| Share Price | $47.8400 | $32.1400 |
| Share Value | $10,678.13 | $7,177.73 |
| Cash Value | $0.00 | $0.00 |
| Net Unsettled Cash | $0.00 | $0.00 |
| **Total Account Value** | $10,678.13 | $7,177.73 |

The quarter-end market closing price is utilized to calculate the Share Value.



*00 QSPSTT009684S238*
Jayne Birch
74


Account Number:

**Questions?**
Questions regarding your account may be directed to the Morgan Stanley Participant Services number and website listed on the first page of this statement.

**Errors and Inquiries**
Be sure to review your statement promptly, and immediately address any concerns regarding entries that you do not understand or believe were made in error by contacting the Branch Manager of the office where you maintain your account. Oral communications regarding any inaccuracy or discrepancy in this statement should be re-confirmed in writing to further protect your rights, including rights under the Securities Investor Protection Act (SIPA). Your statement will be deemed correct unless we receive a written inquiry of a suspected error. See your account documentation for special rules regarding your rights and responsibilities with respect to erroneous electronic fund transfers, including a description of the transfers covered. For concerns or complaints, contact the Morgan Stanley Participant Services number and website listed on the first page of this statement.

**Account Valuation**
Account values are computed by adding (1) the market value of all priced positions, (2) valuations utilizing industry service providers and/or outside custodians for other positions, and (3) adding any credit or subtracting any debit to your closing Cash, Money Market Funds and/or Deposit balance.øCash, Deposits and Money Market Funds are displayed on a settlement date basis, and other positions are displayed in your account on a trade date basis. The values of fixed income positions in summary displays include accrued interest in the totals. In the "Holdings" section, fixed income market value and accrued interest are also displayed in separate columns. Accrued interest is the interest earned but not yet paid on the bond since its last interest payment. In most cases, it is calculated from the date of the last coupon payment (or "dated date") through the closing date of the statement. Foreign Currency Deposits are reflected in U.S. dollars as of the statement end date. The Annual Percentage Yield (APY) for deposits represents the applicable rate in effect for your deposits at the statement ending date. This APY may be different than the APY that was in effect during the statement period. For current Bank Deposit or Money Market Fund yields, go to www.morganstanley.com/wealth-investmentstrategies/ratemonitor.html .

**Availability of Free Credit Balances and Financial Statements**
Under the customer protection rules of the SEC [17 CFR §240.15c3-3], we may use funds comprising free credit balances carried for customer accounts here, provided that these funds are payable to customers on demand (i.e., are free of a lien or right of set-off in our favor or on behalf of some third party to whom you

have given control). A financial statement of this organization is available for your personal inspection at its offices, or a copy will be mailed to you upon your written request.

**Gain/(Loss) Information**
Gain/(Loss) is provided for informational purposes. It is not a substitute for Internal Revenue Service (IRS) Form 1099 (on which we report cost basis for covered securities) or any other IRS tax form, and should not be used for tax preparation. Unrealized Gain/(Loss) provided on this statement is an estimate. Contact your own independent legal or tax advisor to determine the appropriate use of the Gain/(Loss) information on this statement. For more information, go to www.morganstanley.com/wealth/disclosures/disclosures.asp, or call Morgan Stanley Participant Services number.

**Tax Reporting**
Under Federal income tax law, we are required to report gross proceeds of sales (including short sales) on Form 1099-B by March 15 of the year following the calendar year of the transaction for reportable (i.e., non-retirement) accounts. For sales of certain securities acquired on or after January 1, 2011 (or applicable date for the type of security) we are also required to report cost basis and holding period. Under IRS regulations, if you have not provided us with a certification of either U.S. or foreign status on applicable Form W-9 or W-8, your accounts may be subject to either 24% back-up withholding or 30% nonresident alien withholding on payments made to your accounts.

**Pricing of Securities**
The prices of securities are derived from various sources, and do not necessarily represent the prices at which these securities could have been bought or sold. Although we attempt to use reliable sources of information, we can offer no assurance as to their accuracy, reliability or completeness. Prices are as of the date shown only and are not an offer by us or our affiliates to purchase or sell any instrument or enter into any transaction or a commitment by us or them to make such an offer. Prices of securities not actively traded may not be available, and are indicated by N/A (not available). For additional information on how we price securities, go to www.morganstanley.com/wealth/disclosures/disclosures.asp.

**SIPC Protection**
We are a member of Securities Investor Protection Corporation (SIPC), which protects securities of its customers up to $500,000 (including $250,000 for claims for cash). An explanatory brochure is available upon request or at www.sipc.org. Losses due to market fluctuation are not protected by SIPC and assets not held with us may not be covered by SIPC protection. To obtain information about

SIPC, including an explanatory SIPC brochure, contact SIPC at 1-202-371-8300 or visit www.sipc.org.

**Total Income (This Year/This Period)**
Total income, as used in the income summaries, represents dividends and/or interest on securities we receive on your behalf and credit to your account(s) during the calendar year. We report dividend distributions and taxable bond interest credited to your account to the IRS. The totals we report may differ from those indicated as "This Year" figures on the last statement for the calendar year. Only information on Forms 1099 should be used for tax reporting. In the case of Corporations, Real Estate Investment Trusts (REITs), Master Limited Partnerships, Regulated Investment Companies and Unit Investment Trusts, some sponsors may reclassify the distribution to a different tax type for year-end reporting.

**Transaction Dates and Conditions**
Transactions display trade date and settlement date. Transactions are included on this statement on trade date basis (excluding BDP and MMFs). Trades that have not settled as of statement month end will also be displayed in the "Unsettled Purchases/Sales Activity" section. Upon written request, we will give you the date and time of a transaction and the name of the other party to a transaction. We and/or our affiliates may accept benefits that constitute payment for order flow. Details regarding these benefits and the source and amount of any other remuneration received or to be received by us in connection with any transaction will be furnished upon written request.

**Financial Disclosure Statement (in millions of dollars)**
At August 31, 2022 Morgan Stanley Smith Barney LLC had net capital of $2,327 which exceeded the Securities and Exchange Commission's minimum requirement by $2,155. A copy of the Morgan Stanley Smith Barney LLC Consolidated Statement of Financial Condition at June 30, 2022 can be viewed online at: http://www.morganstanley.com/about-us-ir/shareholder/morganstanley_smithbarney_llc.pdf, or may be mailed to you at no cost by calling 1 (833) 445-2492.

Revised 10/2022



**Account Number:** ███████

## SHARE PURCHASE AND HOLDINGS

| Transaction Date | Activity Type | Quantity | Price | Gross Amount | Total Taxes and Fees | Total Net Amount |
|---|---|---|---|---|---|---|
| 7/15/22 | Dividend Credit | | | $6.70 | | $6.70 |
| 7/15/22 | Withholding Tax | | | | | (1.00) |
| 7/18/22 | Dividend Reinvested | 0.122 | $46.7331 | (6.70) | | (5.70) |

*Sell Transactions are provided as of trade date.*

**STATEMENT** | For the Period July 1 — September 30, 2022

Account Number: █████████

This page intentionally left blank



**STATEMENT** | For the Period October 1 — December 31, 2021

## Plan Details:

| | |
|---|---|
| Plan Number: | 93N |
| Company Name: | Pegasystems Inc |
| Issuer Description: | PEGASYSTEMS INC |
| Account Number: | ████████ |

*Morgan Stanley Smith Barney LLC. Member SIPC.*

## Contact Us:

**Morgan Stanley**
Global Stock Plan Services
P.O. Box 182616
Columbus OH 43218-2616

**Morgan Stanley Participant Services**
www.stockplanconnect.com
1-800-367-4777; 1-801-617-7414
24-hour coverage, Monday - Friday. Please check the
website for specific coverage details in your region.

## Share Purchase and Holdings Summary

| | Opening Value (as of 10/1/21) | Closing Value (as of 12/31/21) |
|---|---|---|
| Number of Shares | 132.064 | 150.090 |
| Share Price | $127.1000 | $111.8200 |
| Share Value | $16,785.33 | $16,783.06 |
| Cash Value | $0.00 | $0.00 |
| Net Unsettled Cash | $0.00 | $0.00 |
| **Total Account Value** | $16,785.33 | $16,783.06 |

The quarter-end market closing price is utilized to calculate the Share Value.



*00 QSPSTT0061122813*
Jayne Birch

Account Number:

**Questions?**
Questions regarding your account may be directed to the Morgan Stanley Participant Services number and website listed on the first page of this statement.

**Errors and Inquiries**
Be sure to review your statement promptly, and immediately address any concerns regarding entries that you do not understand or believe were made in error by contacting the Branch Manager of the office where you maintain your account. Oral communications regarding any inaccuracy or discrepancy in this statement should be re-confirmed in writing to further protect your rights, including rights under the Securities Investor Protection Act (SIPA). Your statement will be deemed correct unless we receive a written inquiry of a suspected error. See your account documentation for special rules regarding your rights and responsibilities with respect to erroneous electronic fund transfers, including a description of the transfers covered. For concerns or complaints, contact the Morgan Stanley Participant Services number and website listed on the first page of this statement.

**Account Valuation**
Account values are computed by adding (1) the market value of all priced positions, (2) valuations utilizing industry service providers and/or outside custodians for other positions, and (3) adding any credit or subtracting any debit to your closing Cash, Money Market Funds and/or Deposit balance.⌀Cash, Deposits and Money Market Funds are displayed on a settlement date basis, and other positions are displayed in your account on a trade date basis. The values of fixed income positions in summary displays include accrued interest in the totals. In the "Holdings" section, fixed income market value and accrued interest are also displayed in separate columns. Accrued interest is the interest earned but not yet paid on the bond since its last interest payment. In most cases, it is calculated from the date of the last coupon payment (or "dated date") through the closing date of the statement. Foreign Currency Deposits are reflected in U.S. dollars as of the statement end date. The Annual Percentage Yield (APY) for deposits represents the applicable rate in effect for your deposits at the statement ending date. This APY may be different than the APY that was in effect during the statement period. For current Bank Deposit or Money Market Fund yields, go to www.morganstanley.com/wealth-investmentstrategies/ratemonitor.html .

**Availability of Free Credit Balances and Financial Statements**
Under the customer protection rules of the SEC [17 CFR §240.15c3-3], we may use funds comprising free credit balances carried for customer accounts here, provided that these funds are payable to customers on demand (i.e., are free of a lien or right of set-off in our favor or on behalf of some third party to whom you have given control). A financial statement of this organization is available for your personal inspection at its offices, or a copy will be mailed to you upon your written request.

**Gain/(Loss) Information**
Gain/(Loss) is provided for informational purposes. It is not a substitute for Internal Revenue Service (IRS) Form 1099 (on which we report cost basis for covered securities) or any other IRS tax form, and should not be used for tax preparation. Unrealized Gain/(Loss) provided on this statement is an estimate. Contact your own independent legal or tax advisor to determine the appropriate use of the Gain/(Loss) information on this statement. For more information, go to www.morganstanley.com/wealth/disclosures/disclosures.asp, or call Morgan Stanley Participant Services number.

**Tax Reporting**
Under Federal income tax law, we are required to report gross proceeds of sales (including short sales) on Form 1099-B by March 15 of the year following the calendar year of the transaction for reportable (i.e., non-retirement) accounts. For sales of certain securities acquired on or after January 1, 2011 (or applicable date for the type of security) we are also required to report cost basis and holding period. Under IRS regulations, if you have not provided us with a certification of either U.S. or foreign status on applicable Form W-9 or W-8, your accounts may be subject to either 24% back-up withholding or 30% nonresident alien withholding on payments made to your accounts.

**Pricing of Securities**
The prices of securities are derived from various sources, and do not necessarily represent the prices at which these securities could have been bought or sold. Although we attempt to use reliable sources of information, we can offer no assurance as to their accuracy, reliability or completeness. Prices are as of the date shown only and are not an offer by us or our affiliates to purchase or sell any instrument or enter into any transaction or a commitment

by us or them to make such an offer. Prices of securities not actively traded may not be available, and are indicated by N/A (not available). For additional information on how we price securities, go to www.morganstanley.com/wealth/disclosures/disclosures.asp.

**SIPC Protection**
We are a member of Securities Investor Protection Corporation (SIPC), which protects securities of its customers up to $500,000 (including $250,000 for claims for cash). An explanatory brochure is available upon request or at www.sipc.org. Losses due to market fluctuation are not protected by SIPC and assets not held with us may not be covered by SIPC protection. To obtain information about SIPC, including an explanatory SIPC brochure, contact SIPC at 1-202-371-8300 or visit www.sipc.org.

**Total Income (This Year/This Period)**
Total income, as used in the income summaries, represents dividends and/or interest on securities we receive on your behalf and credit to your account(s) during the calendar year. We report dividend distributions and taxable bond interest credited to your account to the IRS. The totals we report may differ from those indicated as "This Year" figures on the last statement for the calendar year. Only information on Forms 1099 should be used for tax reporting. In the case of Corporations, Real Estate Investment Trusts (REITs), Master Limited Partnerships, Regulated Investment Companies and Unit Investment Trusts, some sponsors may reclassify the distribution to a different tax type for year-end reporting.

**Transaction Dates and Conditions**
Transactions display trade date and settlement date. Transactions are included on this statement on trade date basis (excluding BDP and MMFs). Trades that have not settled as of statement month end will also be displayed in the "Unsettled Purchases/Sales Activity" section. Upon written request, we will give you the date and time of a transaction and the name of the other party to a transaction. We and/or our affiliates may accept benefits that constitute payment for order flow. Details regarding these benefits and the source and amount of any other remuneration received or to be received by us in connection with any transaction will be furnished upon written request.

Revised 09/2021

Account Number: ██████████

## SHARE PURCHASE AND HOLDINGS

| Transaction Date | Activity Type | Quantity | Price | Gross Amount | Total Taxes and Fees | Total Net Amount |
|---|---|---|---|---|---|---|
| 10/15/21 | Withholding Tax | | | | | $(0.59) |
| 10/15/21 | Dividend Credit | | | $3.96 | | 3.96 |
| 10/18/21 | Dividend Reinvested | 0.026 | $128.9479 | 3.96 | | (3.37) |
| 12/3/21 | Release | 7.000 | 110.7400 | | | |
| 12/3/21 | Release | 11.000 | 110.7400 | | | |

*Sell Transactions are provided as of trade date.*

**STATEMENT** | For the Period October 1 — December 31, 2021

Account Number: ██████████

This page intentionally left blank

