# Exhibit F

# COHENMILSTEIN

Richard Speirs<br>
(212) 220-2912<br>
(212) 838-7745<br>
rspeirs@cohenmilstein.com

August 3, 2023

Board of Directors
Pegasystems, Inc.
c/o Michael T. Gass, Esq.
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, MA. 02110

Re:     ***Demand on Pegasystems, Inc. Pursuant to Mass. G.L. c. 156D, §742***

Dear Board of Directors:

     I write pursuant to Mass. G.L. c. 156D, §742 on behalf of Ms. Jayne Birch ("Ms. Birch" or "Stockholder"), a current holder of Pegasystems, Inc. ("Pegasystems" or the "Company") common stock, to demand that the Board of Directors of Pegasystems ("Board")[1] undertake an independent investigation and take action to remedy harm incurred by the Company due to the misconduct of its Chief Executive officer, Alan Trefler ("Trefler"), and the Company's officers, employees and directors, in connection with a judgment exceeding $2 billion obtained by Appian Corporation ("Appian") for, among other things, the theft of Appian's trade secrets (the "Demand"). This Demand follows an earlier request for books and records made to Pegasystems by Ms. Birch pursuant to Mass. G.L. c. 156D, § 1602 on February 6, 2023 (the "Books and Records Request").[2]

---

[1] The current members of Pegasystems' Board are Peter Gyenes, Richard Jones, Christopher Lafond, Dianne Ledingham, Sharon Rowlands, Alan Trefler and Larry Weber.

[2] As evidence of the Stockholder's continued beneficial ownership of Pegasystems common stock, we have enclosed with this letter documentation (in the form of an account statements) reflecting her current and continued ownership of Pegasystems common stock at all relevant times. See Exhibit 1. Ms. Birch intends to continue to hold shares at least through the conclusion of the proceedings contemplated in this Demand.

COHENMILSTEIN

Board of Directors
August 3, 2023
Page 2

On May 9, 2022, a unanimous jury found that Pegasystems had misappropriated trade secrets from its competitor, Appian, and awarded Appian more than $2 billion in compensatory damages ("Appian Litigation"). The jury further found that Pegasystems acted willfully and maliciously by misappropriating Appian's trade secrets. Among the facts supporting the verdict included: (1) Pegasystems hiring a "spy" (i.e., contractor) to gain access to Appian's trade secrets; (2) Pegasystems' CEO, Trefler and others, purportedly admitting to using fake identities to improperly gain access to Appian's software and other confidential information; (3) Trefler participating in a meeting during which Trefler received Appian's trade secrets supplied by that "spy"; and (4) Trefler admitting that Pegasystems should not have hired that contractor. On September 16, 2022, the court entered a judgment in favor of Appian ordering Pegasystems to pay over $2 billion in damages, more than $23 million in attorneys' fees and costs, and post-judgment interest of approximately $122 million per year.

Pegasystems did not disclose either the existence of the Appian Litigation or the underlying scheme and the associated risks for years. Pegasystems finally disclosed the litigation and the risk of a substantial judgment just weeks before the trial commenced.

Subsequently, following entry of the Appian judgment, purchasers of Pegasystems' common stock filed a securities fraud class action against the Company, Trefler, and its CFO Kenneth Stillwell ("Stillwell") in the District Court of Massachusetts for issuing materially false and misleading statements concerning the conspiracy to misappropriate Appian's trade secrets. In a Memorandum and Order, dated July 24, 2023 ("Order"), Judge William Young sustained the claims against Pegasystems and Trefler. Although he dismissed the claims against Stillwell based on insufficient allegations of scienter, Judge Young did so without prejudice. That case will now proceed to discovery on the merits.

We write to formally request, on behalf of Ms. Birch, that Pegasystems fully investigate and take appropriate action as more fully described below concerning, among other things: (i) possible breaches of fiduciary duty by members of Pegasystems' directors and officers (including all of the Board's committees) in connection with, among other things, Pegasystems' alleged scheme to misappropriate Appian's confidential information and violate trade secret laws; (ii) the Company's issuance of materially false and misleading statements in its SEC filings and public statements designed to conceal its illicit business practices; (iii) the Board's failure to oversee and investigate the Company's business practices including violations of the Company's code of conduct by its CEO, senior executives and management; (iv) failure of the Audit Committee to assure the issuance of financial statements and SEC filings that complied with Generally Accepted Accounting Principles ("GAAP") and SEC laws and regulations; (v) improper payments to employees that encouraged illegal and unethical behavior; (vi) payment of compensation to executives, management and the Board based on financial results inflated by the misappropriation of Appian's trade secrets; (vii) corporate waste in connection with the Company's repurchases of its stock at inflated prices; (viii) insider trading by Company officers and directors; and (ix) indemnification for the Company's liability in the securities fraud class action and Appian Litigation. Ms. Birch further demands that the Company initiate litigation against Mr. Trefler and

COHENMILSTEIN

Board of Directors
August 3, 2023
Page 3

others on the Company's behalf and clawback all compensation improperly paid to employees, officers and directors, including for sales of Pegasystems stock while in possession of material non-public information.

## RELEVANT BACKGROUND[3]

Pegasystems operates in the highly competitive Business Process Management ("BPM") industry, providing a "low-code" development platform that allows customers to build customized workflow-based applications for their business needs. The Company automates customer interactions across transaction-intensive enterprises and provides customer relationship management ("CRM") software. It sells its products to customers in the banking, mutual funds and securities, mortgage services, card services, insurance, healthcare management, and telecommunications industries. Appian is one of Pegasystems main competitors.

Beginning as early as 2012, Pegasystems, its senior executives, and employees engaged in a scheme to misappropriate Appian's trade secrets and confidential information. For years, Company officials concealed their scheme, as well as the Appian Litigation that was filed in May 2020 ("May 2020 Complaint") based on Pegasystems' misconduct. Pegasystems commenced its scheme in early 2012 with "Project Crush," by recruiting an Appian developer who was willing to misappropriate Appian's trade secrets for Pegasystems. Pegasystems specifically sought to recruit (through a third party) KForce Inc. ("KForce"), a candidate willing to compromise Appian's trade secrets. KForce introduced Pegasystems to Youyong Zou ("Zou") who had access to the Appian software and documentation that Pegasystems coveted.

From approximately February 2012 to September 2014, Zou collaborated extensively with Pegasystems by using his Appian credentials to access Appian's trade secrets and sell them to Pegasystems. Pegasystems in turn funneled payments to Zou through KForce, the middleman entity. Pegasystems concealed its illicit scheme by assigning Zou the pseudonym "Matt (so that he isn't 'outed' as our spy)." Zou compiled video footage, secretly downloaded Appian's confidential documents and collaborated with Pegasystems officers and personnel to provide them with the misappropriated trade secret information. Pegasystems then used the misappropriated information to develop sales materials, train its salesforce to effectively compete against Appian and make improvements to Pegasystems' own software. Pegasystems disseminated Appian's misappropriated information to hundreds of Pegasystems employees, extolling its importance and promising that—with the benefit of Zou's information—Pegasystems "will win EVERYTIME" and "should never lose against Appian!" The illicit scheme continued until at least 2020.

Evidence has shown that senior executives at Pegasystems were closely involved in the scheme up to the highest level including Trefler, as indicated in testimony from a whistleblower. Among the executives who participated in the scheme were Pegasystems' Chief Product Officer

---

[3] Much of the Relevant Background has been taken from the trial record in the Appian Litigation.

COHENMILSTEIN

Board of Directors
August 3, 2023
Page 4

("CPO") (Kerim Akgonul), Chief Technology Officer ("CTO") (Don Schuerman), Chief of Clients and Markets ("CMM") (Leon Trefler, Trefler's brother), and Head of Product Marketing (Douglas Kim).

In 2019, Pegasystems, under the direction of Trefler, continued its scheme to misappropriate Appian's trade secrets with a renewed plan known internally at Pegasystems as "Teardown". Efforts were made using fake names, or fake companies to gain access to Appian's trade secrets. Trefler himself misrepresented his identity in an effort to access Appian's proprietary information. These efforts continued even as concerns were expressed about the legality of the Company's actions. In early 2020, Appian discovered the scheme when two whistleblowers stepped forward.

## APPIAN TRADE SECRET LITIGATION

On May 29, 2020, Appian filed a complaint against Pegasystems and Zou, in the Circuit Court for Fairfax County, Virginia, asserting claims for trade secret misappropriation, violation of the Virginia Computer Crimes Act, tortious interference and statutory business and common law conspiracy. Appian alleged, among other things, that from 2012 to 2014, Pegasystems had retained Zou, who had access to Appian's software and documentation, to misappropriate Appian's trade secrets and provide them to Pegasystems. The Appian litigation further alleged that "*as recently as [2019]*," Pegasystems had engaged in "unlawful schemes . . . [that] involved stealing Appian's trade secrets and confidential information and then using them to damage Appian's business and reputation, and to steal Appian's customers and potential customers" and that it involved "personnel at Pegasystems . . . including Pegasystems' CEO and Founder, Alan Trefler, and other high-ranking Pegasystems executives." Appian initially sought damages of $90 million, plus punitive damages, treble damages and injunctive relief.

Pegasystems prohibited the very tactics it secretly employed against Appian, including, *inter alia*, using "illegal or questionable means to acquire a competitor's trade secrets or other confidential information, such as . . . misrepresenting your identity in hopes of obtaining confidential information." The Company also misleadingly reassured stockholders of Trefler's responsibilities in providing "guidance as to the propriety" of his employees' actions.

Despite the fact that Appian had filed its complaint against Pegasystems more than eight months earlier, the Company's 2020 Form 10-K (approved and signed by the Board) included only misleading generic risk disclosures regarding *potential* intellectual property matters. Seemingly reflecting the Board's knowledge of Appian's charges that Pegasystems violated its trade secrets, the 2020 Form 10-K noted that the Company had in the past, "*received . . . notices that claim that we have misappropriated, misused or infringed other parties' intellectual property rights . . . .*" Pegasystems, Inc., Annual Report (Form 10-K), 19 (Feb. 17, 2021) (emphasis added).

The Company merely issued a generic cautionary statement in its 2020 Form 10-K (which the Board approved and signed) that "*[f]rom time to time, we may be subject to legal proceedings*

COHENMILSTEIN

Board of Directors
August 3, 2023
Page 5

and civil and regulatory claims that arise in the ordinary course of our business activities." *Id.* at 22 (emphasis added).

Further, the 2020 Form 10-K, also included a misleading boilerplate risk disclosure warning shareholders that Pegasystems "*may be subject to intellectual property rights claims by third parties, which are extremely costly to defend,*" which "*could require* [Pegasystems] *to pay significant damages and could limit* [its] *ability to use certain technologies.*" *Id.* at 19. Instead, it should have noted that it was, in fact, currently subject to such claims and that the risk of being required to pay significant damages was likely.

Although the Company's top officer and other senior executives participated in the scheme, the Company and the Board failed to disclose, among other things, the pendency of the Appian Litigation until they issued its 2021 Form 10-K, almost two years after Appian filed its complaint against Pegasystems and less than five weeks before the case reached trial, despite its potential to materially affect Pegasystems' financials if there was an adverse outcome. Pegasystems asserted that (i) Appian's claims "are without merit," (ii) Pegasystems has "strong defenses to these claims," and (iii) "any alleged damages claimed by Appian are not supported . . . ." Pegasystems, Inc., Annual Report (Form 10-K), 23 (Feb. 16, 2022). Pegasystems continued to hide the underlying years long conspiracy to steal Appian's trade secrets and the magnitude of potential damages inflicted by its misconduct.

In its first quarter Form 10-Q filed on April 28, 2022, near the conclusion of the trial, the Company once again reassured investors that:

> The Company continues to believe that its sales of the products at issue were not caused by, or the result of, the alleged misappropriation of trade secrets, and is submitting evidence to the jury to that effect. The Company is unable to reasonably estimate possible damages because, among other things, of the uncertainty as to how a jury may decide and the parties' existing grounds for appeal based on rulings to date in the proceeding.

Pegasystems Inc., Quarterly Report (Form 10-Q), 18 (Apr. 28, 2022).

Likewise, the Company misleadingly touted Pegasystems' strict Code of Conduct that expressly prohibited precisely the type of illicit behavior that was used to steal Appian's trade secrets and illegally gain access to Appian's software and data.

During the trial, the jury was presented with substantial evidence supporting Appian's claims, including videos, emails, and text messages. It was also revealed that Defendant Trefler had knowledge of and personally participated in the illegal scheme, and he testified under oath that he knew it was inappropriate to hire Zou and knew that Zou had engaged in improper activities. According to an Appian news release,

COHENMILSTEIN

Board of Directors
August 3, 2023
Page 6

      During the seven-week trial, Appian presented evidence that Pegasystems hired an employee of a government contractor (the "Contractor"), to provide Pegasystems with access to Appian's software as a part of an effort to learn how to better compete against Appian. In hiring the Contractor, Pegasystems instructed its third-party contracting service to recruit someone who was not "loyal" to Appian. Appian provided evidence that the Contractor, who worked as a developer in the Appian software under a government contract, violated his employer's code of conduct and his employer's agreement with Appian by providing access to an Appian competitor.

. . . .

      Appian also submitted that Pegasystems' product development team reviewed the materials provided by the Contractor and changed the course of Pegasystems' product engineering to take advantage of the Appian technology they saw. Specifically, Appian put forward documents and testimony that Pegasystems made use of the trade secrets gleaned from the Contractor to make improvements with respect to, among other things, ease of use, and social and mobile capabilities in the Pegasystems platform.

      In addition, Appian presented undisputed evidence that Pegasystems employees used false identities to obtain access to Appian information and trial versions of Appian's software, which were then used for competitive purposes. Mr. Trefler himself admitted to using an alias, "Albert Skii" to obtain access to Appian information. One Pegasystems employee admitted to creating a fake persona and a company to fool Appian into providing him with access to Appian's software platform. Other Pegasystems employees obtained access to Appian's software through Pegasystems partners in India, using credentials provided to those partners under license.

News Release, Appian, Appian Corp. (May 10, 2022) (on file with author).

      On May 9, 2022, following a seven-week jury trial, the jury unanimously decided in *favor of Appian, finding Pegasystems and Zou had misappropriated Appian's trade secrets* in violation of the Virginia Uniform Trades Secret Act and awarding compensatory damages of $2,036,860,045 as against Pegasystems (before interest). The jury concluded that Pegasystems had willfully and maliciously misappropriated Appian's trade secrets, causing Appian to lose more 201 customers and unjustly enriching Pegasystems to the tune of $479 million. Pegasystems shares plunged from $65.93 to $52.95 on May 10, 2022, erasing more than $1 billion in market capitalization in a single day and causing enormous reputational harm. The stock price fell another $4.18 on May 11, 2021.

      On September 16, 2022, it was disclosed that the Virginia court ordered Pegasystems to pay Appian over $23.6 million in attorneys' fees and costs, and post-judgment interest of approximately $122 million per year. The stock price continued to fall significantly on this news.

COHENMILSTEIN

Board of Directors
August 3, 2023
Page 7

## SECURITIES FRAUD CLASS ACTION LITIGTION

As a result of the disclosure of the fraud and precipitous decline in the trading price of the Company's common stock, a securities fraud class action was commenced on May 19, 2022, on behalf of purchasers of the Company's securities between June 16, 2020, and May 9, 2022, against Pegasystems, Trefler and Stillwell. The Class Action Amended Complaint ("Complaint") alleges claims under Sections 10(b) and 20(a), and Rule 10b-5 of the Securities Exchange Act.

The Complaint explains in graphic detail the efforts at Pegasystems to misappropriate Appian's trade secrets. References to internal meetings, emails, and strategy, paint a sordid picture of Pegasystems illicit efforts including the involvement of top officers of the Company, employees, a network of "spies" and the use of multiple aliases. These activities were in blatant disregard of the Company's Code of Ethics which was reviewed and adopted by the Board. Pegasystems' efforts continued into 2020 with the class plaintiffs alleging that Pegasystems continued its illegal conduct even after the Company was sued by Appian.

Class Plaintiffs allege Pegasystems and Trefler made a series of misleading statements to investors in SEC filings, conference calls and other public statements concerning its sales and marketing efforts and competitive successes. However, those statements concealed that Pegasystems' success was largely fueled by misappropriating Appian's trade secrets that were used to enhance its products and that it was using illicit tactics and unethical methods to achieve advantages over its competitors, particularly Appian. Pegasystems is also alleged to have misrepresented information concerning intellectual property, risks of possible claims from its competitors and the status of legal proceedings, while concealing both the scheme to misappropriate Appian's intellectual property and the Appian Litigation itself. Class Plaintiffs further allege that Pegasystems made material misstatements and omissions concerning the Company's internal code of conduct applicable to all employees, consultants and members of the Board which prohibited the activities embodied by the scheme to misappropriate Appian's trade secrets.

The Class Complaint also alleges that Pegasystems and the individual defendants filed false and misleading Sarbanes-Oxley Certifications, and that the Company's financial statements violated GAAP and SEC disclosure rules with respect to its representations regarding legal proceedings and loss contingencies. Among other items, Pegasystems failed to disclose the Appian Litigation, which was a material legal proceeding outside "ordinary routine litigation incidental to [the Company's] business" in violation of Item 303 of SEC Rules. 17 C.F.R. § 229.103(a) (2020). Particularly significant is the fact that Appian's potential damages included up to eight years of sales that had been "tainted by misappropriation" indicating a potential damage number greater than $3 billion. It is further alleged that Pegasystems violated GAAP regarding its failure to disclose a loss contingency associated with the Appian Litigation in violation of ASC 450.

COHENMILSTEIN

Board of Directors
August 3, 2023
Page 8

As reflected in the Class Complaint, the use of various surreptitious methods designed to conceal the years-long scheme from the public and Appian, together with the misleading statements to investors, evidenced a knowing intent on the part of Pegasystems to deceive investors and stockholders.

On July 24, 2023, Judge Young issued an Order in the class action litigation finding that "[b]ased on the factual allegations in the complaint, the most compelling inference is that Trefler was aware of, participated in, and directed Pega's corporate espionage against Appian...In addition, Pega did not discipline the authors of the conspiracy . . . [r]ather it encouraged and rewarded their actions with cash bonuses." Order 2. Judge Young found that Pegasystems deceived investors in multiple ways including its assurances that it would "[n]ever use questionable means to acquire a competitor's trade secrets or confidential information" and reassuring investors in February 2022 that "Appian's claims against Pega were 'without merit.'" *Id.* Judge Young concluded that the facts alleged support a strong inference of that Pegasystems and Trefler acted with scienter finding that "Trefler knew or was reckless in not knowing that his and Pega's statements posed a substantial danger to mislead investors." *Id.* at 19.

In finding that allegations of Pegasystems' statements concerning its code of conduct were materially false and misleading, the Court stated "in short, Pega's most senior executives orchestrated and directed the conspiracy while fostering a corporate culture that promoted and harbored precisely the kind of behavior that Pega promised investors it would prohibit." *Id.* at 26. Further, Trefler and Pegasystems misled investors by categorically denying that Appian's claims had any merit "despite possessing substantial information about the viability of those claims." *Id.* at 30.

## ROLE OF MANAGEMENT AND THE BOARD

Stockholder believes Pegasystems' scheme to misappropriate Appian's trade secrets and its subsequent concealment of Appian litigation by issuing materially false and misleading statements were part and parcel of the Company's efforts to engage in illicit business practices in violation of various laws and the Company's Code of Conduct. These practices were apparently known to and countenanced at the highest levels of the Company (including its CEO Trefler) and, through Trefler (and possibly others), by the Board and its various Committees responsible for overseeing risk, financial and disclosure matters, compensation practices and compliance with the Company's corporate governance policies and guidelines as embodied in its committee charters, Code of Conduct and Company policies.

Thus, during the relevant period, the Directors, in breach of their fiduciary duties owed to Pegasystems, willfully or recklessly made and/or caused the Company to materially misrepresent and overstate the business, operations, competitive position and prospects of Pegasystems. Further, the Company failed to maintain adequate internal controls and risk management systems. As a result of the foregoing, Pegasystems' public statements, SEC filings and financial statements were materially false and misleading at all relevant times. The aforementioned misleading

COHENMILSTEIN

Board of Directors
August 3, 2023
Page 9

statements and omissions painted a false image of the Company which artificially inflated Pegasystems' stock price which resulted in the pending class action securities litigation.

Moreover, documents produced to Stockholder in connection with a previous books and records request from Pegasystems pursuant to Mass. G.L. c. 156D, § 1602, suggest the Board and senior officers breached their fiduciary duties with respect to these matters. Pursuant to that request, Pegasystems produced certain documents purportedly relevant to the Appian Litigation and the Board's role in connection with that litigation, as well as documents related to the Company's Code of Conduct. The documents produced appear to further support a claim for breach of fiduciary duty against the Pegasystems officers and directors. In short, they reflect the absence of any internal controls or reporting system at the Board level designed to address potential or existing violations of the Company's Code of Conduct, anticompetitive practices, or violations of SEC disclosure requirements and accounting rules. The documents reflect that the Board and Audit Committee only belatedly considered the Appian Litigation in February 2022 and endorsed the misleading statements in the Form 10-K and subsequent 10-Q. The Board also ostensibly reviewed the Company's Code of Conduct in December 2020 and December 2021, apparently without considering whether there was any non-compliance and without establishing any procedure to review such violations such as the Appian trade secret conspiracy. None of the documents reflect the Board's consideration (in any way) of the Appian Litigation or its risk to Pegasystems' business until just weeks before the trial.

In addition, during the relevant period certain officers and directors at Pegasystems, including Trefler, sold shares of Pegasystems common stock at artificially inflated prices, ostensibly while in possession of material inside information regarding the illicit scheme to misappropriate Appian's trade secrets as described above. Also during the relevant period, the Board also authorized the Company to repurchase its common stock at artificially inflated prices which constituted waste.

Finally, the Company's actions, including the Board, the Audit Committee and management have caused the SEC to commence an investigation into the Company's accounting practices subjecting it to costs associated with the investigation and possible sanctions.

COHENMILSTEIN

Board of Directors
August 3, 2023
Page 10

## **CONCLUSION**

Based on the overwhelming evidence of illegal conduct and a conspiracy at the highest levels of the Company, including its CEO and Chairman of the Board, and the Company's exposure to a massive judgment and possible liability in the securities class action, Ms. Birch demands that the Company investigate all parties involved in the misconduct, including the Board and its committees for their malfeasance and take appropriate steps to remedy the harm caused to Pegasystems.

Very truly yours,

*[signature]*

Richard A. Speirs

cc:   Ms. Jayne Birch
      Peretz Bronstein, Esq.